IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-00214-02-CR-W-BP |
| | ) | |
| BRYAN C. KIRKENDOLL II, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

On July 1, 2020, counsel for defendant Bryan C. Kirkendoll II filed Defendant's Motion to Suppress Evidence After Unlawful Arrest (Doc. #53) and Defendant's Motion to Suppress Evidence of Illegal Snap Warrant (Doc. #55). A suppression hearing was held on October 14, 2020. New counsel was appointed to represent defendant Kirkendoll on December 15, 2020. On January 6, 2021, the undersigned issued a Report and Recommendation (Doc. #92) with respect to defendant Kirkendoll's motions to suppress. Defendant Kirkendoll filed *pro se* objections (Doc. #93) to the Report and Recommendation on January 15, 2021. Defendant Kirkendoll was granted leave to proceed *pro se* on February 3, 2021. On February 19, 2021, Chief Judge Beth Phillips issued an Order Adopting Magistrate Judge's Report and Recommendation and Denying Defendant's Motions to Suppress (Doc. #102). The case is set for trial on the joint criminal jury trial docket commencing May 3, 2021.

Pending before the Court are three *pro se* motions to suppress which defendant Kirkendoll has recently filed: (1) Motion to Suppress Evidence Obtained Incident to Arrest Upon Defective Complaint (Doc. #111); (2) Motion to Suppress Evidence Obtained From Tracking Device

Without Warrant Supported By Probable Cause (Doc. #115); and (3) Motion to Suppress Evidence Obtained From Exceeding the Scope of a Private Search Without Warrant (Doc. #123). In each of these motions, defendant Kirkendoll seeks to relitigate issues which have been ruled against him.

I. Motion to Suppress Evidence Obtained Incident to Arrest Upon Defective Complaint (Doc. #111)

In this motion, defendant Kirkendoll seeks to suppress evidence obtained incident to his arrest claiming that the Criminal Complaint lacked probable cause to support the issuance of an arrest warrant.[1] However, the Court already determined that defendant Kirkendoll's arrest was supported by probable cause. In the Order Adopting Magistrate Judge's Report and Recommendation and Denying Defendant's Motions to Suppress, Chief Judge Phillips wrote:

> . . . Defendant argues that there was no probable cause to stop Chernetskiy's car and arrest Chernetskiy and himself. (Doc. 93, p. 5.) The agents characterized Defendant's initial contact with law enforcement as a "detention" rather than an "arrest," but Judge Counts found that the officers actually conducted a warrantless arrest on Defendant when he was found in Chernetskiy's car, and that there was probable cause to support the arrest. (Doc. 92, p. 8.) The Court agrees with this analysis.
>
> To arrest a person without a warrant, an officer must be aware of circumstances that demonstrate a "probability or substantial chance" that the person was involved in "criminal activity;" the officer is permitted "substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Winarske*, 715 F.3d 1063, 1066 (8th Cir. 2013), *cert. denied*, 572 U.S. 1003 (2014) (citations and quotations omitted). Here, officers observed a person dressed in similar clothing and otherwise matching the description of Defendant depart in Chernetskiy's car the evening before Defendant was arrested. Defendant also matched photographs of an individual who had been involved in burglaries with Chernetskiy prior to the arrest. The officers used a GPS tracker to trace

---

[1] The motion states: "This 'complaint' sets forth the relevant crime in general terms, it refers to Kirkendoll, and it says he committed the crime. But nowhere does it indicate how SA McKune knows, or why he believes, that Kirkendoll committed the crime." (Doc. #111 at 3.) The Court notes that defendant Kirkendoll fails to acknowledge the Affidavit attached to the Criminal Complaint (Doc. #1-1).

2

> Chernetskiy's movements; they found that Chernetskiy drove to Enid, Oklahoma, and that while he was there, a cell phone store was burglarized in a similar fashion to the other burglaries in which Chernetskiy was a suspect. The officers obtained a description of one of the burglars which matched Defendant. On Chernetskiy's return trip, the officers tracked his car using the license plate number, and then stopped the car once it arrived in Missouri. Chernetskiy and Defendant generally matched the descriptions provided by the Enid police department, along with other information the officers obtained about the perpetrators of similar cell phone store burglaries. This is enough to establish a "probability or substantial chance" that Defendant was involved in "criminal activity."

(Doc. #102 at 5-6.)

Given that the Court, in denying the defendant's previous motion to suppress, found that there was probable cause to support defendant Kirkendoll's arrest, the instant motion to suppress evidence obtained incident to arrest for lack of probable cause must, likewise, be denied.

II. Motion to Suppress Evidence Obtained From Tracking Device Without Warrant Supported By Probable Cause (Doc. #115)

In this motion, defendant Kirkendoll seeks to suppress evidence because he was "arrested partly on the information obtained from the tracking of Chernetskiy's phone." (Doc. #115 at 2.) The motion states that the main issue is "whether there was a warrant authorizing the use of the GPS device and was supported by probable cause to 'search' Mr. Kirkendoll and obtain historical and real time location from him." (*Id.*)

This issue, while not raised in the original motion to suppress, was raised by defendant Kirkendoll in his *pro se* objections to the Report and Recommendation, where the defendant stated: "Defendant objects to the use of a tracking device in which there was no mention of Defendant in the affidavit application for the Search warrant for a tracking device" (Doc. #93 at 4). Chief Judge Phillips addressed the issue in the Order Adopting Magistrate Judge's Report and Recommendation and Denying Defendant's Motions to Suppress as follows:

3

> . . . Defendant objects to the use of the GPS tracking device, arguing that he is outside the scope of the order authorizing the tracking device because there was nothing in the warrant connecting him to Chernetskiy's alleged illegal activities. (Doc. 93, pp. 4–5.) This argument was not raised in either of Defendant's motions to suppress, and regardless, lacks merit. "[L]aw enforcement needs a warrant based on probable cause to access cell phone location records." *United States v. Thompson*, 976 F.3d 815, 822 (8th Cir. 2020). Probable cause exists for GPS tracking when there is a "fair probability" that "location data . . . would lead to evidence" of criminal behavior. *United States v. Petruk*, 929 F.3d 952, 959 (8th Cir. 2019) (citations omitted). Defendant does not contest that there was a fair probability that tracking Chernetskiy's phone would lead to evidence of criminal activity, meaning that probable cause supported the GPS tracking order.
>
> Moreover, "Fourth Amendment rights are personal rights that may not be asserted vicariously," and so "a defendant who fails to prove a sufficiently close connection to the relevant [] objects searched [] has no standing to claim that they were searched . . . illegally." *United States v. Anguiano*, 795 F.3d 873, 878 (8th Cir. 2015) (cleaned up; citations omitted). Defendant does not explain how he had a close connection with, or reasonable expectation of privacy in, Chernetskiy's phone; thus, he lacks standing to challenge the order authorizing GPS tracking for the phone.

(Doc. #102 at 4-5.)

Given that the Court addressed defendant Kirkendoll's objections to the use of the GPS tracking device in denying the defendant's previous motion to suppress, the instant motion to suppress evidence which again raises the same issue must, likewise, be denied.

III.   Motion to Suppress Evidence Obtained From Exceeding the Scope of a Private Search Without Warrant (Doc. #123)

In this motion, defendant Kirkendoll seeks to relitigate the motion to suppress the search of his Snapchat account. Defendant Kirkendoll contends that the warrantless search of his Snapchat account exceeded the scope of the private search exception. (Doc. #123 at 4.)

Chief Judge Phillips addressed the search of defendant Kirkendoll's Snapchat account in the Order Adopting Magistrate Judge's Report and Recommendation and Denying Defendant's Motions to Suppress. The Order states:

4

> . . . Defendant contends that the warrant to investigate Defendant's Snapchat account was not supported by probable cause, because Swygert (1) used a false name when she introduced Special Agents McKune and Ramsey to Defendant's Snapchat account, and (2) lacked authority to access the account. (Doc. 93, pp. 8-9.) The Court agrees with Judge Counts that these arguments do not undermine the validity of the warrant. "[W]hen an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit government use of that information." *United States v. Jacobsen*, 466 U.S. 109, 117 (1984).
>
> Defendant claims that he "orally through Counsel proffered that Ms. Swygert did not have [D]efendant[']s permission to access his Snapchat account." (Doc. 93, p. 9.) But the relevant question is not whether Swygert actually had authority to access and share information from Defendant's Snapchat account; the relevant question is whether the agents reasonably believed that she did. *E.g., United States v. Almeida-Perez*, 549 F.3d 1162, 1169–70 (8th Cir. 2008). Here, it is undisputed that Swygert had access to Defendant's Snapchat account, and also knew Defendant's Snapchat login information, which tends to suggest that she was authorized to access the account; the agents testified that in their experience, it is common for people involved in a relationship to share login information to social media accounts. And as Judge Counts pointed out, there is simply no evidence (aside from Defendant's self-serving assertion) that would have suggested to the agents that Swygert's access to the account was unauthorized. Based on the information in his possession, Special Agent McKune could reasonably conclude that Swygert had common authority over the Snapchat account and could show him its contents. And after seeing the information Swygert volunteered from Defendant's Snapchat account—which included pictures of cash, firearms, new cell phones, and Swygert herself—Special Agent McKune had probable cause to request a warrant to search the account, since he had a reason to believe that the pictures on the account would furnish evidence of Defendant's criminal activity.

(Doc. #102 at 7-8.)

As set out above, Chief Judge Phillips, in denying defendant's previous motion to suppress, found that the agents could lawfully view defendant Kirkendoll's Snapchat account because the agents could reasonably believe that they had consent to view the Snapchat account from a third party (Ms. Swygert) with common authority over the Snapchat account. Judge Phillips did not base her finding on the private search exception. Thus, the instant motion to suppress, which argues that the agents exceeded the private search exception, is moot and therefore denied.

Based on the foregoing, it is

ORDERED that defendant Kirkendoll's Motion to Suppress Evidence Obtained Incident to Arrest Upon Defective Complaint (Doc. #111) is denied.   It is further

ORDERED that defendant Kirkendoll's Motion to Suppress Evidence Obtained From Tracking Device Without Warrant Supported By Probable Cause (Doc. #115) is denied.   It is further

ORDERED that defendant Kirkendoll's Motion to Suppress Evidence Obtained From Exceeding the Scope of a Private Search Without Warrant (Doc. #123) is denied.

 /s/ Lajuana M. Counts
Lajuana M. Counts
United States Magistrate Judge

6

Case 4:19-cr-00214-BP   Document 128   Filed 04/14/21   Page 6 of 6